IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 3:23-cr-00127-1 |
| v. | ) |
| | ) Judge Trauger |
| ARNOLD JUNIOR MARKS | ) |
| a/k/a "AJ" | ) |

## PLEA AGREEMENT

The United States of America, through Henry C. Leventis, United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Joshua A. Kurtzman, and defendant, Arnold Junior Marks, a/k/a "AJ," through defendant's counsel, David Fletcher, pursuant to Rules 11(c)(1)(C) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charges in This Case

1. Defendant acknowledges that he has been charged in the Indictment in this case with:

   a. Count One: Conspiracy to commit weapons trafficking, in violation of Title 18, United States Code, Section 933(b)(3);

   b. Count Two: Conspiracy to commit offenses against the United States, in violation of Title 18, United States Code, Section 371;

   c. Counts Three, Four, Five, Six, Seven, Eight, Eleven, Twelve, and Thirteen: Possession of a firearm by a previously convicted felon, in violation of Title 18, United States Code, Section 922(g)(1);

   d. Count Nine: Possession of a machinegun, in violation of Title 18, United States Code, Section 922(o); and

e. Count Ten: Possession of an unregistered firearm governed by the National Firearms Act, in violation of Title 26, United States Code, Section 5861(d).

2. Defendant has read the charges against him contained in the Indictment. These charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant is Pleading Guilty

3. By this Plea Agreement, defendant agrees to enter voluntary pleas of guilty to all counts contained in the Indictment, charging him with conspiracy to commit weapons trafficking offenses, conspiracy to commit offenses against the United States, possession of a firearm by a previously convicted felon, and possession of a machinegun that must be registered under the National Firearms Act.

### Penalties

4. The parties understand and agree that the offenses to which the defendant is charged carry the following maximum penalties:

a. Count One: Not more than 15 years of imprisonment; not more than three years of supervised release; a $250,000 fine; and a $100 special assessment.

b. Count Two: Not more than five years of imprisonment; not more than three years of supervised release; a $250,000 fine; and a $100 special assessment.

c. Counts Three, Four, Five, Six, Seven, Eight, Eleven, Twelve, and Thirteen: Not more than 15 years of imprisonment; not more than three years of supervised release; a $250,000 fine; and a $100 special assessment. However, if defendant is determined to have at least three previous convictions of either a violent felony or a serious drug offense, then

defendant would be subject to a mandatory minimum term of 15 years' imprisonment, pursuant to 18 U.S.C. § 924(e)(1), and up to five years' supervised release.

    d.    Count Nine: Not more than 10 years of imprisonment; not more than three years of supervised release; a $250,000 fine; and a $100 special assessment.

    e.    Count Ten: Not more than 10 years of imprisonment; not more than three years of supervised release; a $250,000 fine; and a $100 special assessment.

<u>Acknowledgements and Waivers Regarding Pleas of Guilty</u>
<u>Nature of Plea Agreement</u>

5.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 3:23-cr-00127.

6.    Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

    a.    If defendant persisted in pleas of not guilty to the charges against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

    b.    If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charges beyond a

reasonable doubt; and that it must consider each count of the indictment against defendant separately.

  c. If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

  d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

  e. At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

  7. Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

Factual Basis

  8. Defendant will plead guilty because he is in fact guilty of the charges contained in the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) conducted a four-month investigation into a weapons trafficking operation in Nashville, Tennessee, led by the defendant,

4

Arnold Junior Marks. Marks is a convicted felon who is prohibited from possessing firearms. At the time of the offenses described in the Indictment, the defendant was aware that he was a convicted felon based on the length of his prior sentences. During the investigation, an ATF confidential informant ("CI"), who Marks knew to also be a previously convicted felon, conducted nine controlled purchases of firearms from Marks and Marks' co-conspirators. ATF agents audio and video recorded these controlled purchases in addition to physically surveilling Marks and his co-conspirators during each of these transactions.

With respect to Counts One, Two, and Three, on April 30, 2023, and May 1, 2023, the CI and Marks exchanged several text messages coordinating the controlled purchase of firearms. In these messages, Marks offered to sell the CI an "SKS" style rifle for $650 and a "Hellcat 9mm" for $850. During the discussion, Marks also insinuated that he currently possessed more firearms than he could sell the CI and that his source of firearms was able to easily acquire more firearms. On May 2, 2023, Marks directed the CI to come to his house, which is in Nashville, to consummate the sale of the two firearms. However, despite his promises, Marks only sold the CI a Taurus model G2 Millennium 9mm pistol.

With respect to Counts One, Two, and Four, on May 14, 2023, and May 15, 2023, the CI and Marks exchanged several text messages coordinating the controlled purchase of firearms. After negotiating, Marks offered to sell the CI two 9mm Glock pistols for $1,600 ($800 per firearm). Marks, the CI, and an undercover ATF agent met in a restaurant parking lot near the Gaylord Opryland. After arriving, Marks exited his vehicle, passed the CI a Glock model 19 Gen 5 9x19 pistol and a Glock model 19X 9x19 pistol through the driver's side window, took the money from the CI, returned to his vehicle, and then departed the area. Marks and the undercover agent spoke about acquiring additional firearms and Marks explained to the undercover agent that he

5

had to pre-pay for the firearms because his source of supply, co-defendants Kamal Fakhry and Mykyta Strukov, would not "front" him firearms.

With respect to Counts One, Two, and Five, on May 30, 2023, and May 31, 2023, the CI and Marks exchanged several text messages coordinating the controlled purchase of firearms. Marks offered to sell numerous firearms to the CI for various prices. On June 1, 2023, Marks directed the CI to come to his house to purchase the firearms. The CI went to Marks' house and purchased a FN Herstal model Five-Seven 5.7x28mm caliber pistol, a Canik model TP-9 Elite SC 9mm caliber pistol, and a Nornico model SKS rifle from Marks for $3,000. During this controlled purchase, Marks described to the CI how he planned to attach a "Glock switch" to one of his handguns so it would be capable of automatic fire. Marks also explained to the CI that you need a special license from the ATF to possess or manufacture a machinegun but obtaining one "was not worth the price."

With respect to Counts One, Two, and Six, on June 4, 2023, and June 5, 2023, the CI and Marks again exchanged several text messages coordinating the controlled purchase of firearms. On the afternoon of June 5, 2023, Marks told the CI that he could sell an FX-9 pistol for $1,700 and a Springfield Armory XD pistol for $850. Marks also told the CI that an AR-10 rifle was available for $2,000 and was being delivered to "the plug's house" in the Woodbine neighborhood of Nashville, which is a reference to the neighborhood where Marks' co-conspirators lived and worked. Marks invited the CI to come to his house to purchase the FX-9, then ride with Marks to Woodbine to purchase the AR-10. The CI told Marks that he only had $3,500 to spend and would purchase the FX-9 and AR-10. When the CI arrived at Marks' house, Marks exited his house, walked to the CI's vehicle, and provided a Freedom Ordnance model FX-9 9mm caliber pistol to the CI in exchange for $1,500. Marks then told the CI to follow him to Marks to obtain the AR-

10. Marks directed the CI to wait at an auto parts store while Marks met with Kamal Fakhry at the Rains Market & Eatery, which is operated by Fakhry and located on Raines Avenue in Nashville. Marks returned from meeting with Fakhry and provided the CI with a Diamondback Arms Inc. model DB10 7.62x51mm rifle in exchange for $2,000.

With respect to Counts One, Two, and Seven, on June 12, 2023, and June 13, 2023, the CI and Marks exchanged several text messages coordinating the controlled purchase of firearms. Marks eventually explained that he only possessed a Canik pistol and Springfield XD pistol. The CI agreed to the sale, and Marks directed the CI to travel to Marks' home in Nashville. Marks exited the residence and met the CI at the CI's vehicle with the firearms. While standing at the window of the CI's vehicle, Marks provided the CI with a Canik model TP9 SF Elite 9x19mm pistol and a Springfield Armory model XD-40 Sub-Compact .40 caliber pistol in exchange for $1,600.

With respect to Counts One, Two, Eight, Nine, and Ten, on June 22, 2023, the CI drove to Marks' residence and purchased a Glock model 48 9x19 caliber pistol, an Anderson Manufacturing model AM-15 350 LEGEND caliber rifle, 80 rounds of Winchester 350 Legend caliber ammunition, and a machine gun conversion kit commonly referred to as a "Glock switch" from Marks for $3,700. Marks also demonstrated to the CI how to install the Glock switch and explained that it would allow the firearm to discharge ammunition in an automatic fashion, which is the essential characteristic of a machinegun. After this purchase, Marks received a call from a co-conspirator to set up an additional sale of firearms to the CI. Through Marks, the CI intended to buy numerous additional firearms for approximately $4,400. Marks and the CI drove to the Woodbine area of Nashville and Marks made the CI wait in a parking lot while he travelled to meet with his source of these additional firearms.

Agents then physically surveilled Marks to the Rains Market & Eatery where he met with co-conspirators Kamal Fakhry and Mykyta Strukov. While under physical surveillance, Strukov provided Marks with a black bag that contained four additional firearms. Marks then returned to the CI's location and provided him the bag he received from Strukov which contained a Masterpiece Arms model MPA 930DMG 9mm caliber pistol modified for automatic fire, a Rock Island Armory model M19110A1 FS .45 caliber pistol, a Ruger model RUGER-57 5.7x28mm pistol, and an American Tactical model Omni Hybrid multi-caliber pistol. The events described above are overt acts related to the conspiracies charged in Counts One and Two, as well as Count Eight, which charges the defendant with being a previously convicted felon in possession of a firearm. Likewise, the Glock switch that Marks transferred during this transaction was determined to be a machinegun by an ATF expert on the function of firearms and was not registered to the defendant as required by the National Firearms Act as charged in Counts Nine and Ten of the Indictment.

With respect to Counts One, Two, and Eleven, on July 6, 2023, the CI coordinated with Marks for the potential purchase of firearms on July 7, 2023, via phone and text. Marks texted the CI photographs and a price list for firearms available from Marks' co-conspirators. On July 7, 2023, when the CI arrived at the meeting location, he met with Marks who provided the CI with a Walther model P22 .22 LR caliber pistol and a Smith & Wesson model 642-2 "Lady Smith" .38 S&W SPL +P caliber revolver. The CI then gave Marks $3,550 of pre-recorded ATF funds, and Marks departed the meeting location and travelled directly to Rains Market & Eatery to retrieve additional firearms from Fakhry. Agents physically surveilled Fakhry pass a bag containing firearms to Marks and receive currency from Marks in exchange. Marks then travelled back to the

CI's location and provided the CI with a bag containing a Glock model 26 Gen4 9x19mm pistol and a Glock model 48 9x19mm pistol.

With respect to Counts One, Two, and Twelve, on July 9, 2023, and July 10, 2023, Marks and the CI exchanged text messages in which Marks advised that he was able to obtain numerous additional firearms and provided prices and photographs of these firearms. The firearms depicted in the messages were assault rifles and semi-automatic handguns.

Prior to meeting with the CI, law enforcement observed Marks meet with Fakhry and Strukov at the Rains Market & Eatery. Marks then left the Rains Market & Eatery to meet with the CI and obtain the funds to purchase the firearms from Fakhry and Strukov. The CI provided Marks with $8,450 that Marks then delivered Strukov who provided Marks with three bags full of firearms. Marks then delivered these three bags to the CI. The bags contained the following firearms: a Zastava model ZPAP92 7.62x39mm pistol, a Spikes Tactical model ST-15 5.56 caliber rifle, a FN Herstal model Five-seven 5.7x28mm pistol, a HS Produkt Springfield Arms model XD-40 SUBCOMPACT .40 caliber pistol, and a Kimber model Stainless II .45 caliber pistol.

With respect to Counts One, Two, and Thirteen, on August 4, 2023, MARKS text messaged the CI a photograph of firearms that Marks wanted to sell to the CI on August 9, 2023. The firearms depicted in the photograph were assault rifles and semi-automatic handguns.

On August 9, 2023, the CI travelled to Marks's residence to conduct a controlled purchase of firearms. In exchange for $9,000, MARKS provided the following firearms to the CI: a Smith & Wesson model Airweight .38 S&W SPL +P revolver, a Taurus model PT140 G2 Millennium .40 caliber pistol, a Springfield Armory HS Produkt model XDM Elite 9x19mm caliber pistol, a Glock GMBH model 30 .45 caliber pistol, a Glock model 19X 9x19mm caliber pistol, a

9

Romarm/Cugir model Micro Draco 7.62x39mm caliber pistol, a Zastava Arms model MDL ZPAP92 7.62x39mm pistol, and a American Tactical model Omni Hybrid 5.56 caliber pistol.

Following each of the controlled purchases of firearms, an interstate nexus expert examined the firearms described above and in the Indictment. The nexus expert determined that each firearm, prior to the defendant's possession, affected interstate or foreign commerce.

The conduct outlined above occurred within the Middle District of Tennessee.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's pleas of guilty. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

## Sentencing Guidelines Calculations

9. The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a) and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective at the time of sentencing.

10. Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because defendant will have given timely notice of his intention to enter pleas of guilty, thereby

permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

## Agreements Relating to Sentencing

11. This Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a sentence of not less than 80 months' imprisonment and not greater than 120 months' imprisonment, followed by a three-year term of supervised release. Other than the agreed term of imprisonment and supervised release, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes a term of imprisonment consistent with the parties' agreement as set forth herein, the defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d). If, however, the Court refuses to impose a sentence of imprisonment and supervised release consistent with the parties' agreement, thereby rejecting the Plea Agreement, or otherwise refuses to accept defendant's pleas of guilty, either party shall have the right to withdraw from this Plea Agreement.

12. Defendant agrees to pay the special assessment of $1300 at the time of sentencing to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

13. Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

14. Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

15. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

## Entry of Guilty Pleas

16. The parties jointly request that the Court accept the defendant's pleas of guilty as set forth in this agreement and enter an order reflecting the acceptance of the pleas while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

## Waiver of Appellate Rights

17. Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crimes to which he is agreeing to

plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence that includes a term of imprisonment of not less than 80 months' imprisonment and not greater than 120 months' imprisonment followed by three years of supervised release. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence that includes a term of imprisonment of not less than 80 months' imprisonment and not greater than 120 months' imprisonment, followed by a three-year term of supervised release.

Other Terms

18. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office. Defendant further agrees that any monetary penalties imposed by the Court will be subject to immediate enforcement as provided for in 18 U.S.C. § 3613 and submitted to the Treasury Offset Programs so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

13

Case 3:23-cr-00127    Document 97    Filed 10/08/24    Page 13 of 15 PageID #: 357

19. Should defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

## Conclusion

20. Defendant understands that the Indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

21. Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

22. Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

23. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

24. <u>Defendant's Signature:</u> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending Indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I

have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 10-7-24

_____
ARNOLD JUNIOR MARKS a/k/a "AJ"
Defendant

25. <u>Defense Counsel Signature:</u> I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending Indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with the defendant. To my knowledge, the defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 10-7-24

_____
DAVID FLETCHER
Attorney for Defendant

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney

By: _____
Josh Kurtzman
Assistant U.S. Attorney

FOR _____
Ahmed Safeeullah
Deputy Criminal Chief